**Dated: September 15, 2006**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**MARIE ANN HOUGH**                         Case No. 05-72272
**f/k/a MARIE ANN GEIGLE**               Chapter 7

         Debtor,

**MARIE ANN HOUGH**

         Plaintiff,

vs.                                            Adv. No. 05-8124

**OKLAHOMA STATE REGENTS FOR**
**HIGHER EDUCATION**

         Defendant,

**EDUCATIONAL CREDIT**
**MANAGEMENT CORPORATION**

         Intervenor.

**O R D E R**

On the 11th day of August, 2006, the above-referenced adversary proceeding came on for

trial. Appearances were entered by Jerry L. Gunter, Attorney for Plaintiff, David B. Harting, Attorney for Oklahoma State Regents for Higher Education ("OSRHE") and Mac D. Finlayson, Attorney for Educational Credit Management Corporation ("ECMC"). After hearing and reviewing the evidence and testimony presented by the parties, this Court does hereby enter its findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Plaintiff filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code on May 27, 2005. Plaintiff commenced this adversary proceeding to determine the dischargeability of her student loans pursuant to 11 U.S.C. § 523(a)(8).

At the time of trial, Plaintiff was a 55-year-old single woman. Plaintiff has an accounting degree from Langston University/Oklahoma Statue University of Tulsa. Plaintiff stated at trial that she is in fairly good health, and the Pre-Trial Order indicates that she has no chronic medical or mental health conditions. Prior to October 1, 2003, Plaintiff worked as an accounting manager making approximately $60,000.00 per year. Plaintiff was laid off from her job on October 1, 2003, and worked temporary positions thereafter. Plaintiff currently works as an accounting generalist for a not-for-profit agency and her gross monthly income is $3,268.34. After deducting taxes and voluntary withholdings, Plaintiff's net monthly income amounts to $2,212.67. Plaintiff stated at trial that her health and dental insurance are provided by her employer at no cost.

Plaintiff owns her home in Broken Arrow, Oklahoma, and had a first mortgage balance at the time of her bankruptcy scheduled as $73,835, and had a second mortgage balance at that time of $13,975. Plaintiff's home is approximately 2,000 square feet and has five bedrooms. In her schedules, Plaintiff valued the house at $110,000.00. The second mortgage was paid off in June of 2006 by her former spouse in settlement of a child support claim.

Plaintiff scheduled no priority unsecured claims and no secured claims other than the first and second mortgages on her home. The scheduled unsecured non-priority claims consist of credit card debt and student loan debt, and approximately 63% of the unsecured non-priority claims constitute student loan debt.

Plaintiff entered into four Plus loans for $42,140.00 (the "ECMC loans") to assist one of her sons in paying tuition to attend the University of Tulsa from 2000 to 2003. She entered into another loan (the "OSRHE loan") for $6,000.00 to assist her younger son in attending the University of Central Oklahoma in 2003. Plaintiff consolidated the ECMC loans on July 22, 2003. Plaintiff stated that during the course of the student loans, she made over $17,000.00 in loan payments and never missed a payment.

Following the loss of her employment in October of 2003, Plaintiff used funds from her 401K to make payments on the student loans and remained current until March of 2005, just two months prior to filing for bankruptcy relief. Plaintiff stated at trial that during her unemployment she applied for numerous jobs, sometimes as many as fifteen per week.

Plaintiff's 21-year-old son lives at home, and attends Tulsa Community College. He also works part-time in the library at Tulsa Community College, earning $94.95 per week. Plaintiff's son uses these earnings for his personal use, and does not contribute to the household expenses.

Plaintiff held a part-time job doing accounting and bookkeeping work until May of 2006. Plaintiff netted an additional $400.00 per month from the part-time job, but was unable to continue with the additional work due to health concerns. Plaintiff stated that the part-time job caused Plaintiff undue stress and exhaustion. In addition, the company she worked for part-time no longer needed her evening services. Plaintiff also received past-due child support in the amount of

3

$1,000.00 per month until May of 2006.

Plaintiff's current monthly expenses, as set out in the Pre-Trial Order, are as follows:

| | | |
|---|---|---:|
| Mortgage | | $ 845.69 |
| Auto | | |
| | Fuel | $ 107.50 |
| | Service | $ 141.67 |
| | Tags | $ 24.68 |
| Books | | $ 13.12 |
| Cable TV | | $ 69.42 |
| Christmas | | $ 70.41 |
| Church | | $ 233.33 |
| Donations | | $ 7.10 |
| Clothing | | $ 120.00 |
| Dining | | $ 25.00 |
| Gift | | $ 10.00 |
| Groceries | | $ 300.00 |
| Home Improvement | | $ 24.40 |
| House Repair | | $ 241.67 |
| Household | | $ 17.23 |
| Insurance | | $ 355.98 |
| | Medical | $ 58.14 |
| | Dental | $ 9.17 |
| Internet - AOL | | $ 23.90 |
| Miscellaneous | | $ 128.54 |
| Netflix Movie Rental | | $ 19.70 |
| Subscriptions | | $ 18.73 |
| Telephone | | $ 57.99 |
| | Long Distance | $ 10.13 |
| Utilities | | |
| | Electric | $ 200.00 |
| | Gas | $ 32.68 |
| | Water | $ 55.00 |
| Work Expenses | | $ 9.42 |
| | | |
| Total Monthly Actual Expenses | | $ 3,230.60 |

Plaintiff stated at trial that the amounts listed for medical and dental insurance are out-of-pocket expenses for doctor visits. Plaintiff pays for her youngest son's vehicle insurance. Plaintiff also has two life insurance policies. Plaintiff has also paid out-of-pocket for her youngest son's

tuition at Tulsa Community College, although Plaintiff stated at trial she could no longer afford to pay for his tuition.

Plaintiff can consolidate the ECMC loans under the William D. Ford Direct Loan Program ("Ford Program"). Under the Ford Program, Plaintiff's potential payments, based on Plaintiff's adjusted gross income for 2004, would be: (1) $423.56 per month for ten years under the standard repayment plan; (2) $274.54 per month for twenty years under the extended repayment plan; (3) $211.78 per month for twenty years under the graduated repayment plan; or (4) $372.67 per month for just under nineteen years under the income contingent repayment plan. Under the Ford Program, Plaintiff would also become eligible for the full range of deferments and forbearances in repayment that can extend up to three years. The OSRHE loan does not qualify for treatment under the Ford Program, although this loan could become eligible in the future.

The unpaid principal and interest balance due under the ECMC loans was $37,937.05, as of July 18, 2006, with interest thereafter accruing at $6.13 per diem. The original repayment terms of the ECMC loans required monthly installments of $268.80, for two hundred thirty-nine (239) months commencing June 14, 2004, with a final payment in the amount of $265.55 due on May 14, 2024. The ECMC loans are currently in default. The current balance of the OSRHE loan is $5,906.88, with interest accruing at a variable rate of 7.95% per annum. Plaintiff would be required to make a payment of approximately $70.00 per month over ten years to satisfy the OSRHE loan balance.

Section 523(a)(8) excepts from discharge any debt "for an educational ... loan made, insured, or guaranteed by a governmental unit ... unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. §

5

523(a)(8). "In enacting § 523(a)(8), Congress was primarily concerned about abusive student debtors and protecting the solvency of student loan programs." *Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys),* 356 F.3d 1302, 1306 (10th Cir. 2004).

"Undue hardship" is not defined in the Bankruptcy Code. In *Polleys*, the Court of Appeals for the Tenth Circuit adopted a three-part test established by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395 (2d Cir. 1987) for determining undue hardship. *Polleys,* 356 F.2d at 1309. *See also, Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete),* 412 F.2d 1200, 1204 (10th Cir. 2005). The *Brunner* test requires the debtor to prove by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396, *quoted in Polleys,* 356 F.3d at 1307. If the debtor fails to prove any one of the three parts of this test, the student loan debt is nondischargeable under § 523(a)(8). *Polleys,* 356 F.3d at 1307.

The Tenth Circuit Court of Appeals noted, however, that an "overly restrictive interpretation of the *Brunner* test fails to further the Bankruptcy Code's goal of providing a 'fresh start' for the honest but unfortunate debtor..." *Id.* at 1308. The Circuit Court, therefore, went on to state that in order to advance this "fresh start" policy, and to give judges discretion to weigh all the relevant factors, "the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged." *Id.* at 1309.

6

Case 05-08124    Doc 62    Filed 09/15/06    Entered 09/15/06 14:29:02    Desc Main Document      Page 6 of 8

Under the first prong of the *Brunner* test, factors that should be examined include the debtor's income, expenses, health of the debtor and any dependents and the debtor's education and skill level. *Id.* The second prong requires a bankruptcy court to analyze the facts and circumstances affecting the debtor's future financial picture and the third prong includes an examination of whether the debtor has made a good faith effort to repay the student loans by maximizing income and minimizing expenses. *Id.* "Additionally ... the good faith portion of the *Brunner* test should consider whether the debtor is acting in good faith in seeking the discharge, or whether he is intentionally creating his hardship." *Id.*

The second part of the *Brunner* test requires the debtor to show that additional circumstances exist that indicate the state of affairs is likely to persist for a significant portion of the repayment period. "[I]n applying this prong, courts need not require a 'certainty of hopelessness.' Instead, a realistic look must be made into the debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like." *Polleys,* 356 F.3d at 1310. Courts should base their determination under this prong on "specific articulable facts, not unfounded optimism." *Id.*

Plaintiff is able to provide for more than adequate shelter, nutrition and other necessities. Plaintiff has no disabilities or chronic health conditions that affect her future earning capacity. Her children have reached the age of majority, and while one son remains in the household, he is not a dependent under 11 U.S.C. § 523(a)(8). *See Flores v. U.S. Dep't of Educ. (In re Flores),* 282 B.R. 847, 854 (Bankr. N.D. Ohio 2002). Further, if Plaintiff continues to search for a job, she may obtain employment with an earning capacity comparable to that of her previous job. This Court finds that no additional circumstances exist that would hamper her ability to repay the student loans.

The good faith requirement of the third prong can be satisfied by a showing that Plaintiff is

7

"actively minimizing current household living expenses and maximizing personal and professional resources." Polleys, 356 F.3d at 1312.

In examining Plaintiff's expenses, it is clear that Plaintiff is not living without basic necessities. Plaintiff resides in a large home with cable television, internet access, long-distance telephone service and a movie subscription service. Plaintiff is able to provide for much more than a minimal standard of living. Further, Plaintiff is paying some of the expenses of her 21-year-old son. It appears to this Court that the Plaintiff is not doing everything in her power to minimize expenses.

For the forgoing reasons, this Court declines to discharge Plaintiff's student loan obligations to OSRHE and ECMC.

IT IS THEREFORE ORDERED that Plaintiff's student loan debt is **nondischargeable.**

###